UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JASON M. BOURGEOIS                                                  CIVIL ACTION

VERSUS                                                              No. 13-294

W&T OFFSHORE, INC.                                                  SECTION I

## ORDER AND REASONS

Before the Court is the motion[1] for summary judgment filed by defendant, W&T Offshore, Inc. ("W&T"). Plaintiff, Jason M. Bourgeois ("Bourgeois"), has filed an opposition,[2] and defendant has replied.[3] For the following reasons, the motion is **GRANTED**.

## Background

W&T is in the business of producing oil and gas from offshore production facilities and platforms.[4] Wood Group Production Services ("Wood Group") provides production workers to oil companies.[5] Beginning in mid 2009, Wood Group provided Bourgeois, a production worker, to W&T.[6] Bourgeois alleges that he was injured in January 2012 when he stepped on defective grate decking while on one of W&T's offshore platforms.[7]

W&T seeks summary judgment on the ground that Bourgeois is a borrowed employee and, therefore, his exclusive remedy against W&T for his alleged injury is worker's compensation

---

[1] R. Doc. No. 16.
[2] R. Doc. No. 18.
[3] R. Doc. No. 22.
[4] R. Doc. No. 16-2, ¶ 1; R. Doc. No. 18-4, ¶ 1.
[5] R. Doc. No. 16-2, ¶¶ 9-10; R. Doc. No. 18-4, ¶¶ 9-10.
[6] R. Doc. No. 16-2, ¶¶ 8-9, 23, 25; R. Doc. No. 18-4, ¶¶ 8-9, 23, 25.
[7] R. Doc. No. 1-1, ¶ 4.

benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, which is applicable to this action pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, *et seq.*[8]

## Law and Analysis

### I. Summary Judgment Standard

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.* at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for

---

[8] It is undisputed that the platform on which plaintiff's alleged injury occurred was on the Outer Continental Shelf. R. Doc. No. 16-2, ¶ 1; R. Doc. No. 18-4, ¶ 1.

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## II. Borrowed Employee Analysis

### A. Factual Issues

Bourgeois's response to W&T's statement of material facts largely relies on a single repetitive argument: "Plaintiff denies that he worked for or was employed by W&T."[9] Bourgeois additionally attacks some statements of material fact as "inconsistent," but he does not provide record citations to document the purported inconsistency or identify how the inconsistency is material.[10] While mindful of Bourgeois's legal argument that he was not W&T's borrowed servant and did not work "for" W&T as such, the Court treats as admitted those facts that Bourgeois has not disputed with proper record citation. *See* Fed. R. Civ. Pro. 56(c)(1)(A), (e)(2); Local Rule 56.2.

Bourgeois generally admits the accuracy of many of the listed facts while disputing their relevance.[11] In particular, he repeatedly asserts: "Plaintiff further denies that any statements concerning his work on the ST 229 or EW 190 for previous employers, before his employment with Wood Group, have any relevance to the January 5, 2012 accident on the EW 910."[12] The Court agrees with W&T that the 2009-2012 time period during which Wood Group provided Bourgeois

---

[9]*See, e.g.*, R. Doc. No. 18-4, ¶16.
[10]*E.g.* R. Doc. No. 18-4, ¶ 27.
[11]*E.g.*, R. Doc. No. 18-4, ¶ 5.
[12]*E.g.*, R. Doc. No. 18-4, ¶ 24.

to W&T is "more than adequate" to establish borrowed employee status.[13] Accordingly, the Court will not consider the facts relative to original employers other than Wood Group, and Bourgeois's relevancy arguments are moot.

### B. Borrowed Employee Factors

In order to determine borrowed employee status, courts consider nine factors:

(1) Who had control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work was being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 676 (5th Cir. 1993) (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)); *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988). The U.S. Court of Appeals for the Fifth Circuit "has held many times that no single factor is determinative." *Billizon v. Conoco, Inc.*, 993 F.2d 104, 106 (5th Cir. 1993).

---

[13] R. Doc. No. 22, at 2.

Ordinarily, the issue of borrowed employee status is a question of law to be determined by the Court. *Brown*, 984 F.2d at 677. However, some cases involve conflicting evidence and factual disputes with respect to the borrowed employee issue and require findings by a factfinder. *Id.* (citations omitted). In such cases, summary judgment is not appropriate. *Id.*

The Court considers each of the nine factors factor in turn to determine whether a genuine issue of material fact precludes summary judgment.

**1. Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?**

The first factor requires the Court to distinguish "between authoritative direction and control, and mere suggestion as to details or the necessary cooperation where the work furnished is part of a larger undertaking." *Ruiz*, 413 F.2d at 313 (quotation omitted). The parties disagree on the application of the first factor to this case, but the following facts are undisputed.

Wood Group expected Bourgeois to work as directed by W&T and to follow W&T's work orders.[14] Bougeois knew that his job was to follow W&T's orders, as given by Michael Lofton or David Comeaux, who were both W&T employees and would act as the person in charge when present.[15] When neither of these individuals was present, Bourgeois would be designated as the production operator in charge, but Lofton would still act as an "overall supervisor."[16] Lofton occasionally assigned Bourgeois to work on other platforms; on such occasions, Lofton did not consult Wood Group.[17] Lofton set Bourgeois's work schedule, and Bourgeois could only work

---

[14]R. Doc. No. 16-2, ¶ 27; R. Doc. No. 18-4, ¶ 27.
[15]R. Doc. No. 16-2, ¶¶ 11, 27, 30, 33; R. Doc. No. 18-4, ¶¶ 11, 27, 30, 33.
[16]R. Doc. No. 16-2, ¶¶ 33-34; R. Doc. No. 18-4, ¶¶ 33-34.
[17]R. Doc. No. 16-2, ¶ 30; R. Doc. No. 18-4, ¶ 30.

overtime with Lofton's authorization and/or approval.[18] Wood Group had no involvement in setting Bourgeois's schedule.[19]

These facts show that Bourgeois took orders from W&T personnel as to "what work to do, and when and where to do it." *Melancon*, 834 F.2d at 1245. According to Bourgeois, however, his skill as a worker enabled him to act on many occasions as the person in charge and negated the need for W&T to exercise the requisite control over him.[20] Since *Melancon*, district courts have consistently "rejected the argument" that skilled workers who require little supervision cannot be considered borrowed servants. *Robertson v. W&T Offshore, Inc.*, 712 F. Supp. 2d 515, 529 (W.D. La. 2010) (citing cases). In *Melancon* itself, the Fifth Circuit concluded that a plaintiff's "specialized skills" do not bar a finding of borrowed employee status. *See id.* (citing *Huff v. Marine Tank Testing Corp.*, 631 F.2d 1140 (4th Cir. 1980)); *see also Huff*, 631 F.2d at 1143 ("It is of no moment that [defendant's] supervision of the welders was not close."). The admissible evidence shows that this factor weighs in favor of borrowed employee status.

### 2. Whose work was being performed?

The parties agree, and the admissible evidence shows, that W&T's work was performed by Bourgeois. *See Melancon*, 834 F.2d at 1245. This factor supports borrowed employee status.

### 3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

The master service contract between W&T and Wood Group provides that Wood Group is an independent contractor and that neither Wood Group nor its employees or subcontractors are

---

[18]R. Doc. No. 16-2, ¶ 31; R. Doc. No. 18-4, ¶ 31.
[19]R. Doc. No. 16-2, ¶ 31; R. Doc. No. 18-4, ¶ 31.
[20]R. Doc. No. 18, at 6.

W&T's servants or employees.[21] Bourgeois contends that these express contractual terms weigh against borrowed employee status.[22] W&T disagrees, quoting the statement in *Melancon* that "the worksite and the parties' actions in carrying out a contract . . . can impliedly modify, alter, or waive express contract provisions." 834 F.2d at 1245. Here, as in *Melancon*, "[Wood Group] clearly understood that [Bourgeois] would be taking his instructions from [W&T], notwithstanding [] the contract. Obviously parties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise." *Id.* Accordingly, the understanding between Wood Group and W&T weighs in favor of borrowed employee status. *Id.*; *see also Robertson*, 712 F. Supp. 2d at 531-32.

### 4. Did the employee acquiesce in the new work situation?

Bourgeois argues that despite having performed work for W&T for approximately two years, he never became a W&T employee, but this does address the fourth factor.[23] The Fifth Circuit has phrased the relevant inquiry as whether "[c]onsidering the length of time that [plaintiff] worked on [W&T's] platform, we can conclude that he acquiesced to his working conditions." *Hotard v. Devon Energy Prod. Co.*, 308 F. App'x 739, 742 (5th Cir. 2009) (citing *Brown*, 984 F.2d at 678). The Fifth Circuit has affirmed that an employee acquiesces by working as a borrowed employee for a lesser amount of time than the approximately two years at issue here. *See id.* (affirming where employee worked solely for secondary employer for 11 months and noting that one month is sufficient in some cases). The approximately two years at issue in this case weigh in favor of borrowed employee status.

---

[21] R. Doc. No. 18-1, ¶ 3.
[22] R. Doc. No. 18, ¶ 7.
[23] R. Doc. No. 18, ¶ 7; *see also* R. Doc. No. 16-2, ¶ 55; R. Doc. No. 18-4, ¶ 55.

**5. Did the original employer terminate its relationship with the employee?**

Bourgeois argues that "[n]either Wood Group nor Mr. Bourgeois terminated the employment relationship" until after his accident.[24] This approach misconstrues the relevant meaning of "termination." Bourgeois did not communicate with Wood Group about the work being done, and he generally had no contact with Wood Group while he was working on the platform.[25] The Fifth Circuit "do[es] not require total severance of all connections to show termination of the relationship with the original employer; the fact that [plaintiff] had no contact with Wood Group and was supervised totally by [W&T] employees while on the platform is sufficient to meet this factor." *Hotard*, 308 F. App'x at 742. Accordingly, the fifth factor weighs in favor of borrowed employee status.

**6. Who furnished the tools and place of performance?**

Bourgeois concedes that "[s]ince W&T provided the place of performance, transportation to and from the work site, and food and lodging, this factor weighs in favor of borrowed employee status." *See Melancon*, 834 F.2d at 1246.

**7. Was the new employment over a considerable length of time?**

Where an employee's length of employment with the borrowing employer is "considerable," the seventh factor supports a finding of borrowed employee status. Bourgeois concedes that this factor weighs in favor of borrowed employee status.

---

[24]R. Doc. No. 18, at 7.
[25]R. Doc. No. 16-2, ¶ 37; R. Doc. No. 18-4, ¶ 37; *see also* R. Doc. No. 16-5, ¶¶ 34-35.

### 8. Who had the right to discharge the employee?

Bourgeois argues that while W&T could "object to Mr. Bourgeois' continued work on the platform . . . , he remained on Wood Group's payroll and Wood Group had the sole legal right to discharge Mr. Bourgeois."[26] "However, termination of [a] plaintiff's employment with his nominal employer is not the focus of this factor." *Robertson*, 712 F. Supp. 2d at 534. Instead, the Court must determine whether the borrowing employer had the right to terminate its relationship with the borrowed employee. *Melancon*, 834 F.2d at 1246. W&T correctly contends that because it had the right to terminate Bourgeois' employment with W&T, this factor is satisfied.[27] *Id.*; *see also Brown*, 984 F.2d at 679. Accordingly, the eighth factor weighs in favor of borrowed employee status.

### 9. Who had the obligation to pay the employee?

With respect to the ninth factor, regardless of the mechanism used to disburse funds, the ultimate question is which entity furnished the funds to pay the employee. *See Melancon*, 834 F.2d at 1246. In this case, Lofton would approve Bourgeois's time tickets, which would then be submitted to Wood Group, and Wood Group would provide Bourgeois's paychecks.[28] Wood Group would invoice W&T for the hours at an agreed upon rate.[29] The Fifth Circuit has concluded that where, as here, the original employer paid an employee, "but his pay was based on time tickets verified by [defendant]," the ninth factor weighs in favor of borrowed employee status. *Billizon*, 993 F.2d at 105; *see also Melancon*, 834 F.2d at 1246; *Robertson*, 712 F. Supp. 2d at 534.

---

[26]R. Doc. No. 18, at 8 (citing R. Doc. No. 16-4, ¶ 22).
[27]R. Doc. No. 16-1, at 23-24; *see also* R. Doc. No. 16-2, ¶¶ 41-42; R. Doc. No. 18-4, ¶¶ 41-42.
[28]R. Doc. No. 16-2, ¶¶ 45-47; R. Doc. No. 18-4, ¶¶ 45-47; *see also* R. Doc. No. 16-4, ¶ 19.
[29]R. Doc. No. 16-2, ¶ 47; R. Doc. No. 18-4, ¶ 47.


**Conclusion**

For the foregoing reasons, there is no genuine issue of material fact and W&T is entitled to summary judgment as a matter of law. Accordingly, Bourgeois's exclusive remedy against W&T for his alleged injury is worker's compensation benefits under the LHWCA.

**IT IS ORDERED** that the motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned case is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, August 21, 2013.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**